32 Pa. Commonwealth Ct. 541 (1977)
Commonwealth of Pennsylvania, State Dental Council & Examining Board.
No. 61 C.D. 1976.
Commonwealth Court of Pennsylvania.
Argued March 8, 1977.
December 2, 1977.
*542 Argued March 8, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate in the decision.
*543 Richard S. Friedman, with him John C. Howett, Jr., and Friedman & Friedman, P.C., for appellant.
Melvin R. Shuster, Deputy Attorney General, with him Robert P. Kane, Attorney General, for appellee.
OPINION BY PRESIDENT JUDGE BOWMAN, December 2, 1977:
Dr. William F. Bruteyn has appealed from a decision of the State Dental Council and Examining Board (Board) revoking his license to practice dentistry. He contends that his due process rights to a fair and impartial hearing were violated alleging that both the prosecuting Deputy Attorney General and the Board itself unconstitutionally commingled the investigatory, prosecutory, and adjudicative functions.
These proceedings find their genesis in a complaint filed with the Board December 3, 1973 by the Lancaster County Dental Society charging Dr. Bruteyn with improper advertising and unprofessional treatment of patients.
The Board scheduled an informal meeting with Bruteyn on January 14, 1974, after which an investigation was ordered. The initial investigation was conducted into the allegations presented by the Lancaster County Dental Society. Thereafter, an independent investigation was pursued by Melvin R. Shuster, Deputy Attorney General, and Lawrence Alexander, Assistant Attorney General, which culminated in formal charges and a citation by the Board. Several major allegations of professional misconduct were included: improper use and administration *544 of intravenous sedation and general anesthesia; fraudulent advertising; self-administration of drugs; improper delegation of surgical and orthodontic duties to dental assistants; and the false reporting of a crime to law enforcement authorities, thereby evincing moral turpitude.
On September 30, 1975, the Board adjudicated Bruteyn (hereinafter Appellant) guilty on all counts and revoked his license.[1]
Appellant deems this adjudication suspect on two separate though related grounds. He complains initially that the Board, by issuing the formal charges against him, and by authorizing an investigation into those charges, became so inextricably intertwined with the prosecution that an independent and impartial adjudication into his guilt or innocence became an impossibility. Appellant next asserts that the Deputy Attorney General prosecuting the case before the Board served also as the Board's legal advisor before, during and after the hearing, so tainting the proceedings as to deprive Appellant of his constitutional right to a fair trial. In order to determine the viability of these allegations some further facts are necessary.
As the minutes from the Board's meeting with Appellant on January 14, 1974 indicate, it was the Board which made the initial decision that a complete and thorough investigation be made by the Law Enforcement Division. Upon completion of this investigation the Board forwarded the file on May 13 to the Legal Department with its recommendation that a formal hearing be held.
At the next Board meeting on July 29, a hearing was scheduled for September 24. A citation and notice *545 of hearing were prepared, signed by the Board chairman, and forwarded to Appellant.
One of the principals in these prehearing events was Deputy Attorney General Shuster. He had met initially with the Board prior to the January 14 meeting with Appellant to review the file, represented the Board at the meeting, and coordinated the resultant investigation.
The decision to prosecute was ultimately made by the Justice Department, ostensibly by Deputy Attorney General Shuster who informed the Board at its July 29 meeting that a hearing had been scheduled. He then drew up the citation, and undertook the role of prosecuting attorney.
During the course of the hearing the Board was unrepresented by counsel. On two separate occasions it became necessary to rule on motions by Appellant to strike portions of the citation. On each occasion the prosecuting attorney solicited unilaterally a written opinion from his superior at the Division of Commercial, Financial and Governmental Services which was then submitted to the Board to aid in passing on the motions. Appellant cites this as evidence of the continuing role played by the prosecuting Deputy Attorney General as legal advisor to the Board.[2]
On September 30, 1975, the Board met to deliberate and adjudicated Appellant guilty of each of the ten counts contained in the citation. Appellant's license was thereupon revoked.
*546 The Board directed that an Adjudication and Order be prepared and forwarded to the Justice Department for approval. This was done by the prosecuting attorney. In so doing, he included additional facts which, while supportive of the Board's conclusion, had not been voted on or considered at the September 30 meeting.[3] On December 30, 1975, these amendments were unanimously accepted by the Board. Appellant timely filed his appeal, exceptions and application for supersedeas,[4] which appeal is now before us for disposition.
It is conceded that a "fair trial in a fair tribunal is a basic requirement of due process," In re Murchison, 349 U.S. 133, 136 (1954), and this requirement is as applicable to administrative agencies as it is to the courts. Withrow v. Larkin, 421 U.S. 35 (1975); Schlesinger Appeal, 404 Pa. 584, 172 A.2d 835 (1961).
There has been, however, a tendency in the decisional law in which the issue is one of a fair tribunal to give precedential value to prior decisional law in which the sole issue or controlling issue concerned the commingling of functions of staff personnel of an administrative agency, an issue which basically relates to a fair trial rather than a fair tribunal. Of course, it cannot be gainsaid that the end product of the want of a fair tribunal is an unfair trial nor that the want of a fair trial regardless of the impartiality of the tribunal must be condemned; but in our search for *547 even justice before administrative adjudicatory agencies, these two concepts must be delineated in defining the elements of a fair trial and the criteria of a fair tribunal.
Turning first to the role played here by the Board it must be noted that a not insignificant number of our State administrative agencies, The Dental Board included, are authorized under their operative statutes to investigate possible violations of the law, to act as complainant in enforcement proceedings and to adjudicate enforcement proceedings, including those initiated by the agency as complainant.
Whereas we feel the Board may indeed have participated in the initial decision to prosecute, and may have supervised the initial probable cause investigation, this does not render its adjudication invalid per se. The procedures followed here by the Board comport favorably with those expressly sanctioned in State Dental Council and Examining Board v. Pollock, 457 Pa. 264, 318 A.2d 910 (1974), which recognized that a State administrative agency in performing its statutorily authorized dual function of complainant and adjudicator of the complaint is not an unfair tribunal so long as these two functions are adequately separated. The initial investigation was here conducted by the Law Enforcement Division of the Bureau of Professional and Occupational Affairs, the legal office of which, as represented by prosecutor Shuster, determined a hearing was warranted. The same legal office drafted the citation. "A fortiori, there is no Due Process violation in the administrative structure. . . where (the prosecutory and judicial) functions (are) handled by distinct administrative entities with no direct affiliation to one another." State Dental Council and Examining Board v. Pollock, supra at 271, 318 A.2d at 915 (emphasis in original); see also Pennsylvania Human Relations Commission v. Thorp, Reed *548 & Armstrong, 25 Pa. Commonwealth Ct. 295, 301, 361 A.2d 497, 501 (1976).
We do not mean by this holding to minimize the potential dangers arising when those who investigate also adjudicate. We are simply recognizing that inquiries into probable cause do not raise an unconstitutionally high risk of bias or prejudgment so as to invalidate ipso facto a decision, after a contested hearing, that there has been a violation of statute. See generally Withrow v. Larkin, supra; 2 K. Davis, Administrative Law 175 (1958). Some finding of actual bias is required. To hold otherwise would "(overlook) the purpose of judicial and quasi-judicial proceedings as well as the ability of honest men to perform the duty required of them as normal human beings endowed with intellect and reason." Vandergrift Borough v. Polito, 407 Pa. 286, 288, 180 A.2d 215, 215 (1962).
We by no means intend to compromise prior decisional law condemning procedures which conjoin in an individual the prosecutorial and judicial functions. See Dussia v. Barger, 466 Pa. 152, 351 A.2d 667 (1975); Horn v. Township of Hilltown, 461 Pa. 745, 337 A.2d 858 (1975); English v. North East Board of Education, 22 Pa. Commonwealth Ct. 240, 348 A.2d 494 (1975). "Every procedure which would offer a possible temptation to the average man as a judge. . . not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law." Tumey v. Ohio, 273 U.S. 510, 532 (1926). Despite our holding that Appellant was not deprived of a fair tribunal, we do feel that there are sufficient indications in the instant case to warrant a conclusion that this balance was not properly set by the prosecuting Deputy Attorney General, thereby depriving Appellant of a fair trial.
*549 The role of the prosecutor is to fashion as strong a case against the accused as the evidence will allow. This is manifestly at odds with the impartiality required of the adjudicator. When the prosecutor as an individual is permitted in some manner to fulfill the role of the fact-finder one of the necessary elements of a fair trial is lacking. This situation differs markedly in substance from that in which the exigencies of modern corporate government require that one entity within a particular agency make the decision to prosecute, and another to sit as adjudicator.
In State Board of Medical Education and Licensure v. Grumbles, 22 Pa. Commonwealth Ct. 74, 347 A.2d 782 (1975), we held that when an attorney general from the same staff as the prosecutor prepares the adjudication such came "perilously close" to violating due process. In Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong, supra, we questioned in a similar manner the actions of the Pennsylvania Human Relations Commission's legal department acting as both prosecutor and legal advisor to the hearing examiner, albeit through different attorneys. The decision in the latter case, while acknowledging that "[t]he fact finding process . . . must be afforded the broadest dimensions of constitutional protection," turned on the fact that there was no actual prejudice rendering the hearing constitutionally infirm.
We feel these holdings to be consistent with that in State Dental Council and Examining Board v. Pollock, supra, wherein the Supreme Court, although condoning the action of the prosecuting assistant attorney general in "aiding" the Board in drafting the adjudication, did so upon the express finding that
such assistance came after the Board had reached its decision and the assistant in no way participated in or influenced the decision. . . . *550 While it would be a better practice to have review of adjudications conducted by an individual who did not participate in the prosecutorial role, we can find no prejudice here where the Board reached its decision independent of and prior to any assistance from the representative of the Department of Justice. Appellant was not denied Due Process in this regard.
Id. at 272-73, 318 A.2d at 915.
As the prosecuting attorney was here responsible for drafting the Adjudication and Order there was no constitutionally permissible separation of duties such as existed in Thorp and Grumbles. Nor do we find the independence of Board from prosecutor upon which Pollock rested. When the same attorney general who investigated and prosecuted a case then drafts a final Adjudication and Order in which he takes it upon himself to amend and supplement certain findings,[5] we feel the adjudicatory stage of the proceedings to have been unconstitutionally tainted.
This is particularly true when the Board had theretofore relied upon the same attorney general to advise it in preinvestigation meetings, to schedule the formal hearing, and to supply it with legal opinions regarding the defendant's evidentiary motions. Such confluence of prosecutor and adjudicator creates the atmosphere of dependence which distinguishes the instant case from Pollock. Standing alone, the legal advice supplied by the prosecutor would fall subject to the actual prejudice requirement of Thorp, as it did not emanate from the prosecutor himself. It is, however, significant when attempting to define just what role the prosecutor played in these proceedings.
*551 An attorney providing prehearing legal advice to an adjudicatory body should not then serve as prosecuting attorney; the prosecutor should not assume a role of providing legal advice to the hearing body; and finally, the drafting and review of the final Adjudication and Order should be the responsibility of someone other than the prosecutor, particularly any amendments thereto. Taken together such procedures create a sufficient appearance of impropriety as to warrant a denial of due process. Cf. Horn v. Township of Hilltown, supra; see also Department of State v. Chairman, 31 Pa. Commonwealth Ct. 615, 377 A.2d 1022 (1977).
Although we are unconvinced any actual prejudice adhered to Appellant's case, such procedures are so susceptible to prejudice that a remand for a proper hearing is required in order to insure the integrity of the administrative process.
Judge KRAMER did not participate in the decision in this case.

ORDER
NOW, December 2, 1977, the order of the State Dental Council and Examining Board revoking the dental license of William F. Bruteyn, D.M.D. is hereby reversed. The proceedings are remanded to the Board for new proceedings consistent with this opinion.
DISSENTING OPINION BY JUDGE CRUMLISH, JR.:
I must respectfully dissent.
The participation of the Board in the prosecutorial decision was too extensive to be cured by remand and I would reverse it. I must disagree with the conclusion of the majority that the Board's participation in the initial decision to prosecute did not render the adjudication invalid per se.
*552 It must be emphasized that the same individuals on the Board performed both the judicial and prosecutorial functions in this case. The decision to prosecute is the fundamental prosecutorial decision and necessitates a determination that there is probable cause to believe that a defendant is guilty. Such a predetermination of guilt cannot be forgotten by an individual when he in effect puts on new robes and hears the case as judge. In Dussia v. Barger, 466 Pa. 152, 165, 351 A.2d 667, 674 (1975), our Supreme Court held that
[t]he decision to institute a prosecution is such a fundamental prosecutorial function that it alone justifies concluding a dual capacity where the individual also is charged with the responsibility of making the ultimate determination of guilt or innocence. Moreover, it is a decision which requires a judgment as to the weight of the evidence against the accused, a judgment which is incompatible with the judicial function or providing an impartial forum for resolution of the issues presented. (Footnote omitted.)
This case is indistinguishable from Dussia in that the same individuals performed both the prosecutorial and judicial functions. It is also indistinguishable from Gardner v. Repasky, 434 Pa. 126, 252 A.2d 704 (1969), where a member of the Civil Service Commission which heard the appeal of a suspended fireman had been a member of the board which originally brought the complaint. The Court held this position an "independent ground for reversal," Gardner, supra, 434 Pa. at 129, 252 A.2d at 705, even though the member had taken no part in bringing the complaint. The Court held:
This is not to the point. `. . . [A]ny tribunal permitted by law to try cases and controversies must not only be unbiased but must avoid even *553 the appearance of bias.' Commonwealth Coatings Corp. v. Continental Casualty, 393 U.S. 145-50, 21 L.Ed. 2d 301, 37 L.W. 4037-38 (1968). A man cannot sit as judge when he is a member of a board which has brought the accusations. (Emphasis added.)
The case of State Dental Council v. Pollock, 457 Pa. 264, 318 A.2d 910 (1974), cited by the majority in support of its holding, is, in my view, distinguishable. There the Supreme Court specifically found that the legal office of the Commission of Professional and Occupational Affairs had made the decision to prosecute, while here the majority admits that the Board participated in that decision. I believe that this distinction is crucial.
I also cannot agree with the majority that a finding of actual bias is necessary to invalidate the Board's decision. In Schlesinger Appeal, 404 Pa. 584, 598, 172 A.2d 835, 841 (1961), our Supreme Court held that a showing of prejudice was not required "to vitiate a judicial procedure as being violative of due process. Merely, `a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true' is sufficient."
Vandergrift Borough v. Polito, 407 Pa. 286, 180 A.2d 215 (1962), cited by the majority for the contrary proposition, is not controlling. In Vandergrift the appellant claimed that he had not received an unbiased hearing after the Supreme Court ordered remand because the tribunal had members who had participated in the original trial. In contrast, the claim in Schlesinger was, as here, that the same body had impermissibly mixed prosecutorial and judicial functions.
Given my view that the actions of the Board were improper, I cannot agree that a remand is appropriate. The members of the Board who will hear this *554 case serve six-year terms pursuant to The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 124, and it is probable that the same individuals who heard this case originally will hear it again. This case was of extreme length and is unlikely to have been forgotten. Having once made of their minds as to Appellant's guilt, I believe that the Board members could not in good conscience hear the case with proper judicial impartiality, and so I would reverse the Board.
NOTES
[1] Pursuant to Section 3 of The Dental Law, Act of May 1, 1933, P.L. 216, as amended, 63 P.S. § 122.
[2] As the Commonwealth outlines in its brief, the Division of Commercial, Financial and Governmental Services supervises the attorneys assigned to the Legal Office of the Bureau of Professional and Occupational Affairs, and reviews as to legality all adjudications and orders which are prepared by the professional licensing agencies of the Bureau. See Section 36 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, as amended, added by Section 4 of the Act of September 28, 1951, P.L. 1561, as amended, 71 P.S. § 1710.36.
[3] The Commonwealth concedes in its brief that the prosecuting attorney prepared the Adjudication and Order. It does contest, however, Appellant's assertion that the prosecutor also fulfilled the function of approving the same. The record does not indicate through what chain of personnel passed the Adjudication and Order. The record does indicate, however, that the prosecuting attorney assumed responsibility for returning the documents to the Board, and informing it of the additions and amendments.
[4] A supersedeas was granted by Order of this Court dated January 19, 1976.
[5] Again, the Commonwealth disputes just who prepared the additions and amendments; the record is deficient in this regard. It is clear that the prosecutor assumed responsibility for them in his communications with the Board.