# Maurice Osser, Petitioner v. City of Philadelphia, Respondent.

Argued September 12, 1985, before Judges CRAIG and MACPHAIL, and Senior Judge BLATT, sitting as a panel of three.

·. ·*Neil E. Jokelson, Neil E. Jokelson & Associates,* *·P.C.,* for petitioner.

*Barbara R. Axelrod,* Divisional Deputy in Charge of Appeals, with her, *Barbara W. Mather,* City Solicitor, and *Kenneth L. Fox,* for respondent.

OPINION BY JUDGE MACPHAIL, January 9, 1986:

On March 27, 1985, our Supreme Court entered an order[1] reversing a prior order of this Court[2] and remanding this case to us for disposition of the remaining issue as originally certified by the Philadelphia Court of Common Pleas.[3] We will affirm the trial court.

The history of this case and the relevant factual background is found in the prior reported decisions of the trial court, our Court and our Supreme Court. Suffice it to say that Maurice Osser (Appellant) was convicted in the Federal District Court for the Eastern District of Pennsylvania of the crimes of mail fraud, conspiracy and endeavoring to obstruct a criminal investigation. At the time of the alleged crimes, Appellant was an elected City Commissioner of the City of Philadelphia (City). Following his conviction, Appellant resigned his city position and then applied for his pension. When that application was denied by the City's Board of Pensions and Retirement, Appellant filed a complaint in assumpsit in the Court of Common Pleas of Philadelphia. Appellant then moved for judgment on the pleadings.[4] The trial court denied the motion. Appellant then filed a notice of appeal, and the trial court subsequently certified for appeal its

---

[1] *Osser v. City of Philadelphia,* 506 Pa. 339, 485 A.2d 392 (1984).

[2] *Osser v. City of Philadelphia,* 75 Pa. Commonwealth Ct. 145, ·461 A.2d 639 (1983).

[3] *Osser v. City of Philadelphia,* 10 Pa. D. & C. 3d 690 (1979).

[4] Pa. R.C.P. No. 1034.

order denying the motion. The certification order stated the necessary averments to comply with the provisions of 42 Pa. C. S. §702(b)[5] relating to interlocutory appeals by permission. This Court ultimately received the case on a transfer order from the Superior Court and addressed the matter of the constitutionality of Section 217.1 of the Philadelphia Retirement System Ordinance (Ordinance).[6] We held the provision to be unconstitutionally applied to Appellant. The Supreme Court reversed.

Appellant petitioned for reargument and/or remand pursuant to which our Supreme Court modified its previous order of reversal to read as follows:

[5] Section 702(b) of the Judicial Code.

[6] Section 217. Disqualification

217.1. Notwithstanding any other provision of this Article, no employee nor any beneficiary designated by or for any employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System, without interest, if such employee

(a) pleads or is finally found guilty or pleads no defense, in any court, to any of the following:

(1) Perjury committed in connection with his official duties or in any affidavit or proceeding concerning his official duties or conduct;

(2) Acceptance of a bribe for the performance, or affecting the performance or for the non-performance of his official duties, . . .;

(3) Engaging in graft or corruption incident to or in connection with his office or employment constituting a violation of the laws of the Commonwealth of Pennsylvania or the United States;

(4) Theft, embezzlement, wilful misapplication, or other illegal taking of funds or property of the City, . . .;

(5) Malfeasance in his office or employment;

(6) Engaging in a conspiracy to commit any of the foregoing;

Section 217 of the Philadelphia Retirement System Ordinance (Ordinance), *as amended*, April 27, 1967-Bill No. 2318.

Order of the Commonwealth Court reversed and the case is remanded to the Commonwealth Court for disposition of the remaining issue as originally certified by the Philadelphia Court of Common Pleas.

*Osser v. City of Philadelphia,* 506 Pa. 339, 344, 485 A.2d 392, 395 (1984). In order to address the question of what is now before us we must examine what the trial court certified for appellate consideration. The trial court stated that its order denying Appellant's motion for judgment on the pleadings

> involves controlling questions of law as to which there are substantial grounds for difference of opinion, *including:* the constitutionality of the pension ordinance and whether the statutory definition of malfeasance applies to the general crime of mail fraud. It is further certified that an immediate appeal from the said Order would materially advance the ultimate termination of the matter as the factual matters are not in dispute. (Emphasis added.)

The trial judge's opinion which denied Appellant's motion for judgment on the pleadings addresses the four reasons Appellant advanced in an attempt to induce the trial court to enter judgment on the pleadings in his favor, namely that (1) he was not convicted of any of the offenses enumerated under Section 217.1 of the Ordinance; (2) payment of his pension was mandated by statute; (3) his pension rights were vested; and (4) his due process and equal protection rights would be violated if his pension rights were denied.

The City contends that our present review is limited to the issue of whether the statutory definition of malfeasance applies to the general crime of mail fraud, because that is the only other issue mentioned in the trial court's certification. Appellant's brief asserts

and it has been argued to us that there are two questions for us to consider: (1) did the trial court err in finding that Appellant's conviction disqualified him from receiving his city pension; and (2) did the trial court err in holding that the pension was not a vested right which could not be forfeited? It is possible that the word "including" in the trial court's order of certification indicates that more than the two issues he thereafter set forth were to be considered on appeal. Whether we have one or several issues to determine involves an interpretation of a remand order of the Supreme Court, a matter which can best be resolved by that Court. Since both parties have briefed both issues and a ruling on both issues by this Court may avoid another remand in the event of a subsequent appeal, we, out of an abundance of caution, will now proceed to address the questions raised by the Appellant.

Was Appellant's conviction of mail fraud a disqualifying event which compelled the forfeiture of his pension rights under the provisions of Section 217.1 of the Ordinance?

The trial court's discussion of this issue concludes as follows:

That Osser's conviction rests upon acts which give rise to disqualification, particularly under Section 217.1(a), subsections (2), (3) and (5) is beyond cavil.

*Osser v. City of Philadelphia*, 10 D. & C. 3d 690, 697-98 (1979). Appellant argues that his conviction falls under none of the provisions of Section 217.1; City argues that the conviction is disqualifying under Subsection (5).

As we have noted, Appellant was convicted of mail fraud, conspiracy and intent to obstruct a criminal investigation. To support a conviction for mail fraud, the government's evidence must show that the defend-

ant agreed to participate in a scheme to defraud someone and that he caused the mails to be used in the furtherance of such a scheme. *Pereira v. United States,* 347 U.S. 1 (1954); *United States v. Sturm,* 671 F.2d 749 (3d Cir. 1982), *cert. denied,* 459 U.S. 842 (1982). In order to sustain such a conviction, the government must also prove an intent to defraud. *United States v. Stull,* 743 F.2d 439 (6th Cir. 1984).

It is apparent from the pleadings that at all material times Appellant was an elected city commissioner of Philadelphia and that his office empowered him to purchase election equipment on the basis of competitive bidding. It further appears that under the Philadelphia Home Rule Charter no elected official whose salary is paid from the city treasury may benefit from or have an interest in any city purchase contract.[7] Appellant was indicted on charges that he conspired with officials of two printing firms to defraud the City by receiving pre-programmed bids and sending through the mails to one of the printing firms involved seven checks totaling $175,786.35 in conjunction with the scheme to defraud the City. He, of course, was convicted of those charges.

We agree with Appellant that there is no basis for disqualification under Subsections (1), (2) and (4) of Section 271.1. We do find Subsection (3) to be applicable. "Corruption" is defined in the dictionary as "inducement (as of a political official) by means of improper considerations (as bribery) to commit a violation of duty." Webster's Third New International Dictionary 512 (1966). "Corruption" is an act of an official who wrongfully acts contrary to his duty and to the rights of others. *United States ex rel. Montgomery v. Ragen,* 86 F. Supp. 382 (N.D. Ill.

[7] Article X, Section 10-102 of the Charter, 351 Pa. Code §10.10-102.

1949). "Corruption of office" occurs when an office holder agrees to misuse his office in expectation of gain. *United States v. Williams*, 705 F.2d 603 (2nd Cir. 1983). We have no difficulty concluding that Appellant's actions fall within the definition of corruption; moreover, the acts were committed in conjunction with his office and he has been convicted of violating the laws of the United States, specifically, 18 U.S.C. §§1341, 1342, 1371 and 1510.

While the City urges and the trial court found that Subsection (5) was also applicable in these circumstances, we observe that Appellant was not found guilty of the *crime* of malfeasance in office.[8] On the other hand, as the trial court noted, Appellant was found guilty of nine of the eleven counts in the indictment against him and it was these underlying illegal acts that constituted the malfeasance in office even though these same acts did constitute the federal crime of mail fraud. In this connection, we must be conscious that what we are concerned with here is a motion for judgment on the pleadings where, in order for the moving party to prevail, his right must be so clear that a trial would be a fruitless exercise. *Keil v. Good*, 467 Pa. 317, 356 A.2d 768 (1976). We conclude that at least arguably Subsection (5) would also apply in the circumstances of Appellant's conviction.

Our final consideration in this regard is Subsection (6). Appellant was found guilty of conspiracy to commit one or more illegal acts. We have determined that those acts at least arguably fall within the provisions of Subsections (3) and (5). We, therefore,

---

[8]. Malfeasance in office was a common law crime at the time the criminal acts perpetrated by Appellant occurred. *See Commonwealth v. Bellis*, 324 Pa. Superior Ct. 506, 472 A.2d 194 (1984). Common law crimes were abolished by Section 107(b) of the Crimes Code, 18 Pa. C.S. §107(b), effective June 6, 1973.

124

also conclude that Appellant conspired to commit those acts.

In summary, we conclude that the trial court did not err when it held that for purposes of ruling on the motion for summary judgment, Appellant's conviction was disqualifying for pension purposes.

Was Appellant entitled to his pension rights as a matter of law notwithstanding the City's enactment of Section 217.17?

Appellant argues that certain provisions of the Act of May 20, 1915 (First Class Cities Act)[9] render his pension benefits vested and precluded the City from passing an ordinance denying him those benefits. We disagree.

The City adopted its Home Rule Charter pursuant to the First Class City Home Rule Act (Home Rule Act).[10] The Home Rule Act mandates that any city adopting its charter thereunder "shall have complete powers of legislation and administration in relation to its municipal functions."[11] That provision encompasses the power to legislate "to the full extent that the General Assembly may legislate in reference thereto as to cities of the first class, and with like effect . . ."[12]

Section 18 of the Home Rule Act[13] prohibits Home Rule Cities from exercising power contrary to the powers granted by Acts of the General Assembly which are applicable to a class or classes of cities on nine enumerated subjects. Pension plans are not listed among the nine.

Section 18 also prohibits Home Rule Cities from exercising powers contrary to powers granted by acts

---

[9] P.L. 566, *as amended*, 53 P.S. §§13431-13449.

[10] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §13101-13157.

[11] Section 17 of the Home Rule Act, 53 P.S. §13131.

[12] *Id.*

[13] 53 P.S. §13133.

of the General Assembly which are applicable in every part of the Commonwealth or to all cities of the Commonwealth. Our Supreme Court dealt with these provisions of the Home Rule Act in *Addison Case,* 385 Pa. 48, 122 A.2d 272 (1956), *appeal dismissed,* 352 U.S. 956 (1956). In holding that a general state statute did not work a nullification of a provision in the Philadelphia Home Rule Charter dealing with appeals from decisions of civil service boards the Court stated:

In Lennox v. Clark, 372 Pa. 355, 378-379, 93 A.2d 834, Mr. Chief Justice STERN, speaking for the court said, 'There seems to exist an erroneous impression on the part of the plaintiffs in all these actions regarding section 18 of the Home Rule Act which forbids the city [Philadelphia] to exercise powers contrary to powers granted by acts of the General Assembly applicable in every part of the Commonwealth or to all the cities of the Commonwealth. It is argued that because plaintiffs perform their respective functions and duties in pursuance of general laws which impose similar or identical duties upon officers holding corresponding positions throughout the Commonwealth, the city is thereby shorn of all power to interfere with them or their employes. Nothing could be further from the truth, it being abundantly clear that the limitations of power referred to in section 18 concern only laws in relation to substantive matters of State-wide concern, such as the health, safety, security and general welfare of all the inhabitants of the State, and not to matters affecting merely the *personnel* and *administration* of the offices local to Philadelphia and which are of no concern to citizens elsewhere. Any other conclu-

sion would reduce the Charter to a mere scrap of paper and make the much heralded grant of Philadelphia home rule an illusion and a nullity.' *Addison* at 55, 122 A.2d at 274-75 (emphasis in original).

Our Supreme Court in *Ebald v. Philadelphia*, 387 Pa. 407, 128 A.2d 352 (1957) affirmed a trial court decision that a Philadelphia Civil Service Regulation promulgated under the Philadelphia Home Rule Charter which dealt with disability compensation for Philadelphia firemen and policemen did not deal with a matter of state-wide concern; and, therefore, the City was not precluded from promulgating such a regulation.[14]

We find, in accord with *Lennox, Addison* and *Ebald,* that Section 18 of the Home Rule Act does not withhold from the City the power to pass the Ordinance here in question. It does not fall under one of the nine prohibited areas. Further, it is an administrative and personnel matter not affecting citizens in other parts of the state.

Finally, the First Class Cities Act, which Appellant argues renders Appellant's pension benefits vested, does not apply to a Home Rule City like Philadelphia. The Act was amended in 1951 with the addition of the following section:

Nothing contained in this act shall be construed to affect the power of a city of the first class or the powers or duties of any board, department or the council thereof to provide and administer pension and retirement systems covering officers and employes of the city, *as provided by and authorized and directed under*

---

[14] *Ebald v. Philadelphia*, 7 D. & C. 2d 179 (1956).

*the Home Rule Charter of such city.*[15] (Emphasis added.)

The City, therefore was not precluded from passing the Ordinance and the First Class Cities Act does not render Appellant's pension benefits vested.[16]

Having concluded that Appellant has not met his burden of showing that his right to judgment on the pleadings is so clear that a trial would be a fruitless exercise, we must affirm.

## ORDER

The order of the Court of Common Pleas of Philadelphia County denying and dismissing Maurice Osser's Motion for Judgment on the Pleadings in the above-captioned matter is affirmed and the case is remanded to the trial court for further proceedings.

Jurisdiction relinquished.

---

[15] Section 5 of the Act of January 21, 1951, P.L. (1952) 2184, 53 P.S. §13447.

[16] Appellant further argues that Section 1 of the Act of June 19, 1969, P.L. 85, 53 P.S. §13449 evidences a legislative intent to reserve to the legislature control of the City's pension plan. Section 1 reads:

> Any city of the first class may, at any time, by ordinance, increase the retirement allowances or pensions of its retired employes after the termination of the services of such employes.

Appellant argues that this section, in empowering first class cities to increase pensions, somehow indicates that the legislature never intended to confer on Home Rule cities the power to pass an ordinance revoking the pension privileges of a city official convicted of misconduct but rather had reserved such power to itself all along. We refuse to accept Appellant's tortuous reasoning. The Act of June 19, 1969 in no way indicates that it was meant to change the statutory scheme already in place. The Act was obviously intended merely to protect first class cities from charges of fraud by taxpayers if such cities decide to unilaterally increase pensions to meet the demands of inflation or the cost of living.