510 A.2d 835

Board of Pensions and Retirement and City of Philadelphia, Appellants *v.* George X. Schwartz, Appellee.

Argued December 12, 1985, before Judges CRAIG, BARRY and PALLADINO, sitting as a panel of three.

*John M. Myers,* Assistant City Solicitor, with him, *Pamela Foa* and *Valerie West,* Assistant City Solicitors, and *Barbara W. Mather,* City Solicitor, for appellants.

*Richard M. Rosenbleeth,* with him, *Norman L. Holmes, Blank, Rome, Comisky & McCauley,* for appellee.

OPINION BY JUDGE BARRY, May 30, 1986:

This appeal results from an order of the Philadelphia County Court of Common Pleas which reversed the decision of the Philadelphia Board of Pensions and Retirement (Board) suspending pension payments to George X. Schwartz (Schwartz), and which remanded the case to the Board for computation of the amount due.

Schwartz, while president of the city council, was indicted on charges of conspiracy while in public office to

violate the Racketeer Influenced Corrupt Organizations Act (RICO)[1] and the Hobbs Act.[2] A federal court trial ensued and Schwartz was found guilty,. resigning his office three days thereafter. The district court, however, set aside the conviction and granted a judgment of acquittal on the grounds of entrapment.[3] Schwartz then applied for his pension from the city. That pension was granted based upon the advice of the city solicitor's office.[4] One year later, however, the Third Circuit reinstated the conviction[5] and remanded to the trial court for sentencing. After his post-trial motions from that proceeding were denied, Schwartz prosecuted another appeal to the Third Circuit.

The Board of Pensions and Retirements thereupon held a hearing with respect to Schwartz's pension eligibility, having received an opinion from the Law Department of the City of Philadelphia that under the Philadelphia Retirement System Ordinance (Ordinance) the pension was to be suspended because of Schwartz's earlier "resign[ing] while under . . . criminal charges."[6] That opinion, which had been requested by the Board, was based upon Section 217.2 of the Ordinance, which provides, in pertinent part:

> Where an employee is dismissed for [among other things, 'engaging in graft or corruption incident to or in connection with his office,' (Section 217.1 of the Ordinance)], *or resigns while*

---

[1] 18 U.S.C. §1962(d).

[2] *Id*. §1951(a).

[3] *United States v. Jannotti*, 501 F. Supp. 1182 (E.D. Pa. 1980).

[4] N.T., Hearing of 2/24/83, at 70.

[5] *United States v. Jannotti*, 673 F.2d 578 (3d Cir. 1982), *cert. denied*, 457 U.S. 1106 (1982).

[6] The City has conceded that its *earlier* advice that Schwartz was entitled to pension payments was erroneous. *Brief for Petitioner* at 28.

*under such charges,* no retirement or other benefit shall be payable pending the final disposition of any criminal proceedings and the expiration of any period for appeal. . . .

*Id.* (emphasis added). At an ensuing hearing convened to consider a suspension, the city was represented by Tyler Wren (Wren), the same attorney who had submitted to the Board the requested legal advice with respect to whether a suspension of Schwartz's pension was in order. Another assistant city solicitor, Ralph Teti (Teti) served as a voting member of the Board. Both the giving of advice and service on the Board by the city solicitor are mandated by the Philadelphia Home Rule Charter.[7]

At the conclusion of the hearing the Board voted five to four in favor of suspending Schwartz's pension. Teti, notably, voted in favor of suspension, creating a tie vote and forcing the chairman to vote, which vote constituted the fifth and pivotal vote resulting in the suspension. Schwartz then appealed to the trial court, which held that the proceedings had denied Schwartz due process, declaring as inappropriate Wren's dual role as advisor and prosecutor, and stating as further grounds "the participation of Mr. Wren's supervisor, Ralph Teti . . . as a voting member of the Board. . . ." *Trial Court op.* at 4. The trial court then disqualified Teti's vote, thereby eliminating the need of the chairman's tie-breaking vote; without these votes to suspend, the count became four to three *against* a suspension, and the court thus remanded for a computation of pension benefits due. From that decision and order the city and Board have appealed.

Where, as in the present case, the trial court has taken no additional evidence, our scope of review is lim-

---

[7] The pertinent provisions so mandating are reproduced later in the accompanying text.

ited to a determination of whether the local agency abused its discretion, committed an error of law, violated constitutional rights, and whether substantial evidence supports the agency's factual findings. *Rosen v. Montgomery County Intermediate Unit No. 23*, 90 Pa. Commonwealth Ct. 335, 337 n. 1, 495 A.2d 217, 218 n. 1 (1985). Undertaking our review, we note that the city in its appeal has argued that the trial court erred as a matter of law in finding that a "commingling" of functions caused a denial of due process to Schwartz; that the court abused its discretion by disqualifying Teti and recalculating the suspension vote; and that the very issue of any error having been made in the suspension of benefits has become moot because of the intervening finalization of his conviction. Schwartz has argued to the contrary on all of these points.

The trial court in the present case determined that an impermissible commingling had occurred due to the functions carried out at the hearing by members of the city's Law Department undertaken directly pursuant to the city's Home Rule Charter. Wren undertook the role of representing the city pursuant to Section 4-400(a) & (b) of the Charter,[8] and provided legal advice to the Board pursuant to Section 8-410, which provides, in pertinent part, as follows:

> Whenever any . . . board . . . shall require legal advice concerning his or its official business or whenever any legal question or dispute arises or litigation is commenced in which any . . . board . . . is officially concerned . . . it shall be the duty of such board . . . to refer the same to the Law Department.
>
> It shall be the duty of any . . . board . . . having requested and received legal advice from the

---

[8] 351 Pa. Code §4.4-400(a), (b).

Law Department regarding his or its official duty, to follow the same; and when any officer shall follow the advice given him in writing by the Law Department he shall not be liable in any way for so doing upon his official bond or otherwise.

351 Pa. Code §8.8-410. Teti, meanwhile, sat as a member of the Board pursuant to Section 3-803 of the Charter, which provides, relevantly, that "[t]he Board of Pensions and Retirement *shall* consist of the Director of Finance . . . , the City Comptroller, the *City Solicitor*, the Personnel Director and four other persons. . . ." 351 Pa. Code §3.3-803 (emphasis added).

In attempting to remedy the perceived denial of due process, the trial court disqualified Teti's vote and effectively ordered that the pension not be suspended. We disagree, however, that a commingling has occurred in the present case that denied due process to Schwartz, and thus reverse the trial court's holding to that effect.

a. *Combining of Prosecutorial and Adjudicatory Functions*

Reconciling our precedents, this Court has recently explained that a denial of due process by way of commingling occurs when "one individual serves as both a prosecutor and an adjudicator," and that due process *may* be violated when "prosecutorial and adjudicatory functions are performed by [different individuals within] the same branch" of government. *Philadelphia Commission on Human Relations v. Gold,* 95 Pa. Commonwealth Ct. 76, 80, 503 A.2d 1120, 1121 (1986). It is this latter commingling situation which the trial court erroneously declared to have existed due to Teti's serving on the Board in the presence of Wren's advocatorial posture.

In *Miller v. Department of Transportation,* 59 Pa. Commonwealth Ct. 446, 447, 429 A.2d 1278, 1279

(1981), we held that the test to be applied in such situations "is whether the functions performed by the two are adequately separate so that there is no *actual* prejudice." *Id.* (emphasis added). We have acknowledged as relevant factors in ascertaining such prejudice "(1) a determination of whether or not anything in the record indicated improper commingling of the functions on the part of the [involved individuals] and (2) whether or not either is disclosed as having concerned himself with the other's activities." *Hartman v. State Board of Optometrical Examiners,* 71 Pa. Commonwealth Ct. 110, 113, 454 A.2d 1150, 1152 (1983). In the present case there have been no allegations and, indeed, there is no record evidence of cooperation between Wren and Teti. The trial court premised its finding of a commingling, instead, on the notion that the very *presence* of the two assistant solicitors in their respective roles created a situation "so susceptible to prejudice" that due process was violated as a matter of law. *Trial Court op.* at 3 (quoting *Bruteyn v. State Dental Council and Examining Board,* 32 Pa. Commonwealth Ct. 541, 551, 380 A.2d 497, 502 (1977)). This is not, however, the rule. *Hartman,* 71 Pa. Commonwealth Ct. at 113-14; 454 A.2d at 1152 (fact that two assistant attorneys general, one prosecuting case and the other acting as counsel to Board, were both attached to same bureau *held,* "not a per se . . . violation of due process."). The trial court appears also to have been under the mistaken impression that Teti was Wren's *supervisor,* a relationship neither supported by the record nor advanced by Schwartz in this appeal.[9]

---

[9] *See Trial Court op.* at 4. *Cf. Goldberg v. State Board of Pharmacy,* 49 Pa. Commonwealth Ct. 123, 130, 410 A.2d 413, 417 (1980) (where legal advisor to Board was "direct supervisor of the prosecuting attorney," impermissible commingling found, notwithstanding absence of actual prejudice).

Because our close examination of the record reveals neither improper commingling, prejudice, nor concern by one attorney with the affairs of the other, we cannot agree with the trial court that Schwartz was denied due process because of the mere presence of the two assistant solicitors.

b. *Combining of Advisory and Prosecutorial Functions*

This Court has acknowledged that a denial of due process may result when prosecutorial and *advisory* functions are commingled. *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong*, 25 Pa. Commonwealth Ct. 295, 301, 361 A.2d 497, 501 (1976); *Bruteyn*, 32 Pa. Commonwealth Ct. at 551, 380 A.2d at 502. We have, indeed, indicated that the advisorial role is effectively *adjudicative* in nature, demanding exclusivity from the prosecutorial function in order to avoid a denial of due process.[10] In the present case, the trial court cited a lack of such exclusivity as additional grounds for the finding of a commingling and a resultant denial of due process. We are unable, however, to concur in that assessment.

This Court has, in the course of determining whether an impermissible commingling has taken place recognized that

> the most critical function in the prosecution and adjudication of administrative cases is in the resolution of *disputed facts* because the findings of fact which result from administrative proceedings are subject to only limited appellate review. The *fact finding process*, therefore, must be afforded the broadest dimensions of constitutional protection.

---

[10] *See, e.g., Thorp*, 25 Pa. Commonwealth Ct. at 301, 361 A.2d at 501 (legal advisor to Board defined as performing "adjudicatorial function").

*Thorp,* 25 Pa. Commonwealth Ct. at 302, 361 A.2d at 501 (emphasis added).[11] Embraced by this acknowledgement is the important principle that a commingling of functions only threatens an individual's due process rights, and is thus impermissible, when that coalescing of roles operates to prejudice, or has an opportunity to prejudice, the *facts* to be found.[12] This principle controlled in *Thorp,* in which "two individuals . . . within the same branch of an administrative agency" performed, respectively, prosecutorial and advisory functions. Although the Court noted that such circumstances placed the Court at the "interface" between permissible and impermissible commingling, no such illicit admixture was found:

> [I]t is significant that the facts of this case are largely undisputed . . . and that the [necessary findings] are not challenged. . . . The possible absence of constitutional protections during the critical fact finding phases of this case, therefore, was not a factor which resulted in any unfairness. . . . The issue [in this case] is a matter of legal determination, not of determination of fact. [A] reviewing court unquestionably has power to examine the legal conclusions drawn [from the factual findings to determine] whether such conclusions were affected by bias or otherwise. Viewing the case in this light, we do not believe . . . [that a denial of] due process of law [has occurred].

*Thorp,* 25 Pa. Commonwealth Ct. at 302-03, 361 A.2d at 501-02 (footnote omitted).

---

[11] *See also Goldberg,* 49 Pa. Commonwealth Ct. at 130, 410 A.2d at 417.

[12] *See also* Gornish, *Due Process in Administrative Hearings in Pennsylvania: The Commingling of Functions Under Feeser and Dussia,* 15 Duq. L. Rev. 581, 602, 604 (1977).

In the situation with which we are currently presented, we find this principle to dictate that no impermissible commingling has taken place. The issue before the Board, indeed, was strictly limited to the question of whether an individual who resigns while under a criminal indictment, and who is later temporarily vindicated by a judgment of acquittal, has "resigned while under charges" for purposes of the pension eligibility provision. The only relevant facts—those of Schwartz's indictment, initial conviction, resignation and temporary vindication—were undisputed matters of public record, and the issue thus became, as in *Thorp,* strictly one of law. The resolution of that issue, in turn, is one unqualifiedly receptive to review by an appellate court. We thus believe that Wren's acts, first of submitting a legal opinion to the Board, and then advocating the correctness of that opinion, did not cause a breach in the wall of Schwartz's constitutional protections.

In so holding we sound no retreat from our "prior decisional law condemning procedures which conjoin in an individual the prosecutorial and judicial functions." *Bruteyn,* 32 Pa. Commonwealth Ct. at 548, 380 A.2d at 501.[13] Had Wren advised the Board regarding such matters as evidentiary motions, *see Bruteyn,* which would indeed have affected the fact-finding responsibility of the Board, or otherwise involved himself as an advisor in a quasi-adjudicatorial fashion, we would have no difficulty in deciding that an illicit commingling had oc-

---

[13] Nor do we retreat from our admonitions in *Goldberg,* 49 Pa. Commonwealth Ct. at 130, 410 A.2d at 417, and in *Bruteyn,* 32 Pa. Commonwealth Ct. at 541, 380 A.2d at 502, that "the prosecutor [is] not [to] assume the role of providing legal advice to the hearing body"; where, however, as here, that advice is limited to a proposition of law the provision of which could not possibly prejudice rights, thereby imperiling the integrity of the administrative process, no impermissible commingling has occurred.

curred.[14] We cannot hold, however, that Wren's single act of providing to the Board a purely legal opinion, unaccompanied by any other action, constituted a denial of due process to Schwartz.[15]

In so holding we reject the contention made by Schwartz in this appeal that the Home Rule Charter, by mandating that the City Solicitor undertake these divergent roles, is unconstitutional on its face. As we have discussed previously in this opinion, due process will not be violated as long as the various functions are "adequately separate so that there is no actual prejudice." *Miller,* 59 Pa. Commonwealth Ct. at 447, 429 A.2d at 1279 (1981). If in the future legal advice is required which affects the fact-finding process, circumstances totally lacking in the present case, due process will be served under the charter by the Law Department ensuring that the foregoing admonition with respect to separation of functions is honored.

Because the trial court premised its reversal of the Board solely on the grounds of commingling, we re-

---

[14] Indeed, in an opinion filed this day by this Court, we held that an improper commingling had occurred when the same assistant city solicitor (1) appeared as an advocate against the claim in an evidentiary proceeding; (2) served as counsel to the board panel; and (3) voted as a member of the Board, all of which functions were undertaken pursuant to the Home Rule Charter. *See Board of Pensions and Retirement v. Amanto,* 97 Pa. Commonwealth Ct. 550, 510 A.2d 846 (1986). *Compare Horsley v. Board of Pensions and Retirement,* 97 Pa. Commonwealth Ct. 558, 511 A.2d 841 (1986) (no improper commingling found in case where issue was purely one of law).

[15] Even were we to sustain the trial court's determination that an unconstitutional commingling had occurred, that court clearly erred in summarily disqualifying Teti and recalculating the vote. The proper course in such instances is to remand with directions that a new hearing in consonance with due process be held. *See, e.g., Goldberg,* 49 Pa. Commonwealth Ct. at 130-31, 410 A.2d at 417.

mand to that court for consideration of the other issues raised by Schwartz[16] in his original appeal.

ORDER

Now, May 30, 1986, the order of the Court of Common Pleas of Philadelphia County, at No. 1793, March Term, 1983, dated August 16, 1984, is reversed and remanded, for consideration of the other issues raised by Schwartz in his original appeal.

Jurisdiction relinquished.

---

[16] As recited earlier in this opinion, the city has argued that the issue of whether any error, due process or otherwise, was committed in the course of the suspension hearing is moot due to Schwartz's intervening final conviction. *See United States v. Jannotti*, 729 F.2d 213 (3d Cir. 1984). Along this line of reasoning, any of the other issues raised by Schwartz—most notably whether he indeed "resigned while under charges"—would also be moot. As suggested by our resolution of the due process issue, we are in disagreement with that argument. While Schwartz may indeed now be totally disqualified from receiving a pension under Section 217.1 of the Ordinance, *see Osser v. City of Philadelphia*, 94 Pa. Commonwealth Ct. 116, 503 A.2d 466 (1986), the issue of whether the suspension thereof was proper under Section 217.2, and was legitimately arrived at, is not moot until the city moves forward under the former section to permanently disqualify Schwartz.