524 A.2d 1022

Gerald W. Beaver, Petitioner *v.* Angelo Ortenzi, Vice President of Student Affairs, East Stroudsburg University, and East Stroudsburg University, a Commonwealth agency, Respondents.

362

Argued November 17, 1986, before Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*James V. Fareri, . Mervine, Brown, Newman, Williams and Mishkin, P.C.,* for petitioner.

*Wayne M. Richardson,* Chief Legal Counsel, for respondents.

OPINION BY JUDGE BARRY, April 21, 1987:

This appeal results from an order of the Vice-President of East Stroudsburg University which adopted in its entirety the recommendation of the University Student/Faculty Judicial Board (Board) that the petitioner herein, Gerald W. Beaver, receive a suspended suspension for his "major violation" of the Student Code of Conduct.

Neither the Board nor the Vice-President made any findings of fact, but the following scenario we believe describes adequately the unfolding of events in this case. On October 31, 1985, two resident advisers of the dormitory in which petitioner resided were walking in the vicinity of petitioner's room when they smelled what they believed to be marijuana smoke. Upon entering petitioner's room they found petitioner's roommate, Richard Allen (Allen) attempting to rid the room of smoke by means of an electric fan. When questioned about the smoke, Allen replied that it was petitioner and his friends, rather than he, who had caused it, and that petitioner and friends had since departed for a concert. Allen testified later, however, that he did not see anyone actually smoking, due to the fact that he was "out cleaning the hotpot" during most of the friends' visit.

Upon inspection of the room, a small quantity of what were apparently marijuana seeds was found in a styrofoam cup and was subsequently confiscated. Allen testified that he had found them in the room and had placed them in the cup in the course of his tidying of the room. After the resident advisers filed a report concerning the incident, Beaver appeared before the Assistant Dean of Students, Joseph Catanzaro, and told him that Allen was not "involved in the alleged incident."

After it was determined that the confiscated material was marijuana, petitioner was accused of violating the

Student Code of Conduct by engaging in the "illegal use . . . or possession of narcotics or drugs (Marijuana)." He was informed that he had the right to a hearing on the matter and that he had the right to counsel to represent him at such hearing.

Petitioner opted for this procedure and he and counsel thereafter appeared at a hearing of the Student/ Faculty Judicial Board convened on November 12, 1985. The Chairwoman, one Balducci, initiated the proceeding by reading the charges against petitioner. She then proceeded to call as witnesses the two resident advisers and Allen, the roommate. These individuals testified, pursuant to Balducci's questioning, substantially as recounted above. Counsel for petitioner then cross-examined the witnesses during which process Balducci objected to counsel's attempt to challenge the competence of one of the resident adviser's testimony. Balducci also undertook to offer as evidence the marijuana seeds and a police report analyzing the substance.

Petitioner then testified that, while his friends may have been smoking in the dorm room, (1) it was only a stale *cigar* which had been smoked—by one "Bubba"; and (2) that in fact during this period he, petitioner, had not in fact been in the room at all, but, rather had gone to the student union to cash a check in contemplation of the subsequent outing. Petitioner also denied testimony which had been offered from Catanzaro that he had told the latter that Bubba had brought *marijuana* into the room and smoked it in his presence.

Petitioner was then interrogated with respect to this testimony by Balducci and other Board members. During this portion of the hearing petitioner denied any knowledge of the marijuana seeds, but surmised that Bubba and friends had been rolling a marijuana cigarette for smoking at the later gathering. At the end of

the hearing, petitioner offered testimony that apparently conflicted with his earlier denials.

Following the testimony, the Board in an oral statement found petitioner "guilty of Major Violation No. 7, Illegal Use or Possession of Narcotics or Drugs," and recommended a suspended suspension as penalty. Counsel for petitioner then initiated the following exchange.

> [Mr. Fareri]: I was wondering if the Board would be willing to say on the record whether . . . its adjudication of guilt . . . was in any manner founded upon the second sentence of Major Violation No. 7 which states, 'Students present in any situations where narcotics or illegal drugs are used, found[,] shall be deemed to be in possession of said contraband.'
>
> . . . .
>
> [Balducci]: Yes, that it was his room, they were his friends, that he also said in his statement to Dean [Catanzaro] that his roomate [sic] did not have anything to do with [it] . . . not that he was smoking, that was never a fact—but it was within his room and it occurred in his room.
>
> [Fareri]: That was just a point of clarification.
>
> [Balducci]: And that's what the main basis behind it, no one was accusing Gerald of smoking.

*H.T.*, 11/12/85, at 23. Petitioner then challenged the decision before the Vice-President, charging, among other things, that a commingling of functions had occurred during the adjudication in violation of petitioner's due process rights, and that the second sentence of "Major Violation No. 7"—imputing illicit possession of drugs to anyone in the presence of such substance—was violative

of petitioner's right to substantive and procedural due process. The Vice-President, however, denied the appeal, and petitioner thereupon brought the present petition for review.

Our review of this case is limited to a determination of whether an error of law has been committed, whether any constitutional rights have been violated, and whether the necessary findings of fact are supported by substantial evidence. 2 Pa. C. S. §704. *See Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 382, 517 A.2d 523, 525 (1986). Petitioner continues his assertions in this appeal that his due process rights were violated due to alleged commingling of prosecutorial and adjudicatory functions during the hearing and that he was found guilty pursuant to a rule unconstitutionally imposing culpability for possession of illegal drugs. Petitioner also asserts as error several violations by the Board of the Administrative Agency Law (AAL).[1]

## 1. *Constitutional Challenge*

It is not disputed that, as commonwealth agencies, state universities are bound by the tenets of the AAL in the course of disciplinary proceedings initiated against students. *See Kusnir v. Leach,* 64 Pa. Commonwealth Ct. 65, 71-72, 439 A.2d 223, 227 (1982). *And compare Krynicky v. University of Pittsburgh,* 560 F. Supp. 803, 809 (W.D. Pa. 1983). Agencies bound by the law are, of course, charged with affording the same due process considerations to individuals whose rights are being adjudicated as are judicial tribunals. *Cf. Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong,* 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976).

---

[1] Act of April 28, 1978, P.L. 202, 2 Pa. C. S. §§101-754.

However persuasive petitioner's allegation of *de facto* commingling of prosecutorial and adjudicatory functions[2]—and hence of potential deprivation of procedural due process—we conclude that the penalty imposed in the present case does not "rise to the level of the deprivation of a right secured by the Constitution requiring judicial relief." *Sill v. Pennsylvania State University,* 462 F.2d 463, 470 (3d Cir. 1972). In short, petitioner has not been sufficiently aggrieved so as to have standing to allege deprivation of his right to procedural due process under the federal and our state constitution.

This we conclude due to the fact that the penalty, a suspended suspension, did not deprive petitioner of the

---

[2] The record in the present case sets forth a proceeding in which the adjudicatory body's members, led by its Chairwoman, announced the charges against the petitioner, acted in an adversarial capacity vis-a-vis petitioner's counsel, submitted and testified as to the identity of critical evidence, attempted an interrogative cross-examination to discredit the petitioner, and openly voiced their disbelief of petitioner's testimony. The University in its brief sets forth the following defense:

> The members of the Board . . . gave Mr. Beaver a reasonably fair and impartial hearing. It was a University administrative hearing conducted by lay persons, and not a bench trial. Everyone involved discharged his/her duty in a good faith fashion to insure that Mr. Beaver received due process. Nothing more can be expected of lay persons, particularly when they are being pilloried with endless objections and arguments having little if any substance.

*Brief for Respondent* at 8.

The illicit character of such commingling is well established. *See Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1975). *See also Board of Pensions and Retirement v. Schwartz,* 97 Pa. Commonwealth Ct. 539, 544-45, 510 A.2d 835, 838 (1986). *See generally* Gornish, *Due Process in Administrative Hearings in Pennsylvania: The Commingling of Functions Under Feeser and Dussia,* 15 Duq. L. Rev. 581 (1977).

right of continued attendance at the University.[3] *See Sill.* In the cited case, a number of students demonstrating against the Vietnam War were arrested after the demonstrations turned violent, with personal and property injuries as well as general disruption of campus order resulting. In connection with the arrest, the students were charged with violations of the University Code of Student Conduct, and received a hearing on the charges before a specially convened tribunal. Most of the students received substantial penalties such as dismissals or extended suspensions, *see* 462 F.2d at 466, but several others received only probation. When the students thereafter brought constitutional challenges to several aspects of the proceedings and the code in the district court, those placed on *probation* were held by that court not to have standing. The appeals court agreed:

> [The students receiving probation did not experience any] interruption in their activities as students. The district court held that they . . . had not been aggrieved in the constitutional sense so as to have standing to challenge the regulations here involved and that the punishment imposed upon them, being placed on probation and being denied certain school privileges, did not rise to the level of the deprivation of a right secured by the Constitution requiring judicial relief. [. . . .]

---

[3] Although this is not a point of dispute, we note that the student handbook defines a "Suspended Suspension" as follows:

> The student may be permitted to remain at the University under strict circumstances. In such cases, the student is considered 'not in good standing.' Should a violation of regulations occur during this period of sanction, the Vice President for Student Affairs may immediately activate the suspension.

*Id.* at 28.

We find no error in the conclusion of the district court that the students who were placed on probation did not have standing to maintain the present action.

*Id.* at 470-71.

We view ourselves as bound by the Third Circuit's construction of standing under the federal constitution; hence we can reach no other conclusion but that petitioner—like the probationary plaintiffs in *Sill*—was not sufficiently aggrieved so as to possess standing. *See also School District of Harrisburg v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 503-04, 309 A.2d 353, 358 (1973). In the latter case, the Supreme Court adopted *Sill* and held that the threshold into constitutional due process analysis had not been crossed where the plaintiff, a school district, had received as a disciplinary penalty from an athletic association only a *limited* sanction:

The appellant has not been suspended from the PIAA. Harrisburg has continued to conduct its athletic program with the single significant impediment that it must begin its games and practices before 4:00 P.M.[:]

'[T]he probationary plaintiffs have not been aggrieved in the constitutional sense so as to challenge the regulations . . . , the procedure followed, or the punishment imposed. Being placed on probation . . . does not . . . rise to the level of the deprivation of a right secured by the constitution requiring judicial relief.' [. . . .]

[Our] decision of this matter [thus] does not rest upon our analysis of appellant's claim of the denial of due process. . . .

*Id.* (footnote omitted). Although the *Harrisburg School District* court did not specify whether it was considering federal or Pennsylvania constitutional protections

when it adopted the *Sill* rationale, we are satisfied that the former case indicates an intention to undertake in any event the federal constitutional analysis in approaching due process standing issues.[4]

Consequently, as both federal and Pennsylvania precedent confirm that a penalty such as that received by petitioner does not constitute an aggrievement giving rise to a constitutional claim, we must dismiss petitioner's due process challenge alleging an unfair hearing.

For this same reason we must dismiss petitioner's claim that the rule he was found to have violated was invalid as creating "an unconstitutional presumption of possession" of contraband. That rule, which imputes illegal possession of drugs to anyone in the presence of such substance, would, of course, be unconstitutional to establish *criminal* behavior,[5] and application of it to establish violation of a University *disciplinary rule* would be highly questionable, were the penalty expulsion or actual suspension. In the present case, however, the punishment meted out under this rule simply does not deprive the petitioner of a right which would in turn give rise to a constitutional claim. *Sill.*

---

[4] We recognize that the opinion in *Harrisburg School District,* authored by then-Chief Justice JONES, was joined by only two other justices, with two more concurring in the result only and two others dissenting without opinion. We, however, find the analysis of *Sill* by Chief Justice JONES to be entirely persuasive in analyzing the "level of aggrievement" attendant to sanctions imposed by school officials.

[5] *See Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971). *See generally* 21A Am. Jur. 2d, *Criminal Law* §782 (1981) ("As a matter of constitutional law, the due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

## 2. *Adequacy of Findings; Failure to Administer Oath*

Petitioner also maintains that a remand is necessary because of the Board's failure to render written findings of fact and conclusions of law in accordance with Section 507 of the Law. *See* 2 Pa. C. S. §507. This argument was not, however, raised in petitioner's appeal to the Vice-President, and petitioner thus waived the argument. *Id.* §703(a). *See Hugh H. Eby Co. v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 135, 407 A.2d 148 (1979). We note in any case that, notwithstanding the Board's clear failure in this regard, the basis for the Board's decision is well apparent by virtue of the oral explanation provided by the Chairwoman. The lack of formal findings does not, then, preclude review of the case by this Court. In this latter regard, we note that petitioner does *not* contend that the evidence does not support the Board's decision,[6] but only that the involved rule of conduct and procedure employed by the Board were constitutionally infirm.

With respect to the Board's failure to swear in the witnesses, a violation of the AAL, we note that this assignment of error has also been waived. 2 Pa. C. S. §703(a).

## 3. *Conclusion*

In denying the present appeal we do not mean to countenance the highly suspect procedures employed by the Board, nor do we commend it for its flouting of the strictures of the Administrative Agency Law. On this record, however, we cannot say that those proce-

---

[6] Petitioner did and does object, however, to the Board's permitting of hearsay evidence into the record. While the Board did indeed allow such evidence into the record, the hearsay statements were supported by direct testimony supporting the content of those statements, and hence no basis for a charge of error.

dures resulted in an aggrievement sufficient to give petitioner standing to challenge the procedures, nor was the Board's flouting of the AAL so egregious that its decision warrants a reversal of the order involved here.

ORDER

NOW, April 21, 1987, the order of the Vice-President, East Stroudsburg University, accepting the recommendation of the Student/Faculty Judicial Board that Gerald W. Beaver be placed upon a suspended suspension, dated November 26, 1985, is hereby affirmed.

Judge KALISH dissents.