Robert Chaby, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Optometrical Examiners, Respondent.

Argued February 2, 1978, before Judges CRUM-LISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Jerome H. Gerber,* with him *James L. Cowden,* and *Handler, Gerber and Weinstock,* for petitioner.

*Louis B. Rubin,* Assistant Attorney General, with him *Gerald Gornish,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., May 25, 1978:

Robert Chaby (Appellant), an optometrist licensed by the State Board of Optometrical Examiners (Board), has appealed from the Board's decision suspending his license for 30 days on the grounds of gross incompetency and misrepresentation in violation of Section 9 of the Act of March 30, 1917, P.L. 21, *as amended,* 63 P.S. §237, commonly known as the Optometry Act (Act).

The objectionable conduct giving rise to the issuance of a citation against Appellant concerned his alleged failure to treat properly two patients, Ms. Christine Lannutti and Mrs. Mavoureen Weiss, who had engaged him to prescribe and furnish contact lenses in March, 1974. His prescriptions for lenses were filled by Jay Kornblatt, an optician with whom Appellant shares offices, and neither patient saw Appellant after their initial visit. Sometime in late April, Appellant moved his office from Philadelphia to Doylestown, where he continued to practice without Kornblatt.

When Mrs. Weiss picked up her lenses on March 18, Kornblatt showed her how to insert and remove and care for them. Thereafter, she experienced difficulty in removing the left lens and telephoned the office several times and spoke to Kornblatt. She made an appointment for March 26 but, upon arriving at the office, she found it closed. On March 28, she

again visited the office and had Kornblatt re-instruct her on removal of the lens. On the evening of April 3, while practicing inserting and removing the lenses, she was unable to remove the left lens, and the eye became bloodshot and puffy. Assuming that Appellant's office was closed, Mrs. Weiss did not attempt to contact him, but went instead to the emergency room at Einstein Hospital where an opthalmologist removed the lens.

On April 15, when Mrs. Weiss and her husband reached Appellant by telephone at home, Appellant offered Mrs. Weiss an appointment; but when the Weisses stated that they were going to complain to the Better Business Bureau and the Board, Appellant withdrew the offer and told the Weisses that he did not want to be bothered with them, and hung up.

Ms. Lannutti, who had worn contact lenses for the preceding five years, picked up her new lenses from Kornblatt on March 8. Several weeks later, her eyes became irritated and she was unable, after repeated attempts, to contact Appellant because his office was closed. She consulted her family physician.

The following week, after Ms. Lannutti was again unsuccessful in her repeated attempts to reach Appellant by telephone, her father went to Appellant's office and found an "out-of-business" sign and a referral telephone number on the door. The telephone number was that of another optician who in turn referred Ms. Lannutti to an opthalmologist for examination. When, after many more phone calls, she finally reached Appellant at his home and told him of her difficulties and her consultations with other physicians, he said, "go to hell," and hung up. Later, however, he offered her an appointment at his new office, but the time conflicted with her work hours and she declined. Appellant agreed to and did, in fact, compensate Ms. Lannutti for the expense she incurred in procuring new lenses.

The charges against Appellant may be set forth as follows: that when he moved his offices, he failed to make adequate arrangements for the follow-up care of his patients; that after learning of his patients' difficulties, he conducted himself so as to discourage them from seeking his care; and that he failed to advise his patients that Jay Kornblatt was an optician and not an optometrist, and thereby misled them. Appellant argues that, as improper and as unprofessional as his conduct may have been on certain occasions, it does not rise to the level of gross incompetency or misrepresentation and hence did not constitute a violation of the Act. We agree and reverse.[1]

In appeals from decisions of the State Board of Optometrical Examiners, our duty is to affirm the decision of the Board unless we find that it violates the appellant's constitutional rights, that it is not in accordance with law or that any of the Board's necessary findings of fact are unsupported by substantial evidence. Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.44. Section 9 of the Optometry Act provides, in pertinent part:

> The State Board of Optometrical Examiners . . . may cancel, revoke, or suspend the operation of any certificate by it granted, for any or all of the following reasons; . . . gross incompetency . . . or misrepresentation of the optometrical profession in which untruthful statements are made. . . .

---

[1] Appellant also argues that his suspension must be set aside because (1) the Board found him guilty of misrepresentation although it had failed to give him adequate notice that he was being charged with that offense; (2) the statutory provision which he was found to have violated is unconstitutionally vague; and (3) he was denied due process because the case was not heard by an impartial tribunal. Because we find that his actions did not constitute violations of the Act, we do not reach these other issues.

The clear and unambiguous language of the Act indicates that the offense of misrepresentation requires an actual conveying of false information. There is no evidence in the record that Appellant at anytime represented to either of the complainants or to anyone else that Jay Kornblatt was a licensed optometrist or a physician of any type or that he falsely described the boundaries of the optometrical profession.[2] Therefore, to the extent that the Board's adjudication rested upon a finding that Appellant had engaged in an act of misrepresentation, the Board erred.

Addressing the main thrust of the Board's adjudication, we hold that the findings do not support the conclusion that Appellant, by the entire course of his conduct toward the complainants, was guilty of gross incompetency. Nowhere in the Act is the term "gross incompetency" defined, and it must therefore be given its ordinary meaning. Webster's Third New Inter-

---

[2] Section 1 of the Act, 63 P.S. §231, defines "optometry" and "optometrist" as follows:

§231 'Optometry' defined

That the practice of optometry is hereby defined to be the employment of any means or methods, other than the use of surgery, or drugs, except diagnostic pharmaceutical agents known generically as cycloplegics, mydriatics, topical anesthetics and miotics which are administered topically for the examination of the human eye and the analysis of ocular functions, or the prescribing, providing, furnishing, adapting or employing any or all kinds and types of lenses and prisms, visual training orthoptics, ocular exercises, and any and all preventive and corrective methods for the aid, correction or relief of the human eye. its associated structures, appendages and functions, other than the use of drugs or surgery. The Secretary of Health shall designate the specific agents to be used under the above generic classification. . . .

The term 'optometrist' means a person who practices optometry in accordance with the provisions of this act.

national Dictionary (1966) defines "incompetent" as "lacking the qualities (as maturity, capacity, initiative, intelligence) necessary to effective independent action; insufficiency; inadequacy." It defines "gross" as "glaring, flagrant, utter, unmitigated, rank." The Board cited *State Board of Dental Examiners v. Savelle,* 90 Colo. 177, 8 P.2d 693 (1932), which defined "gross" as being "out of all measure, beyond allowance, not to be excused; flagrant, shameful."

We believe that Appellant's conduct, inexcusably discourteous as it may have been, is not "incompetency." As did the Board, we expressly censure Appellant for his reprehensible behavior. Yet, inasmuch as the legislature has empowered the Board to punish only that behavior which rises to gross incompetency, we must reverse its imposition of sanctions.

Accordingly, we

ORDER

AND Now, this 25th day of May, 1978, the decision of the State Board of Optometrical Examiners, dated July 15, 1976, suspending Robert Chaby's license to practice optometry for a period of 30 days, No. OEB-3608, is reversed and the suspension is vacated.