Harriet A. Carr, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Pharmacy, Respondent.

Argued October 4, 1979, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*William T. Steerman*, for petitioner.

*Robert M. Sitoski*, with him *Charles L. Ford*, Chief Counsel, and *Edward G. Biester, Jr.*, Attorney General, for respondent.

OPINION BY JUDGE BLATT, January 7, 1980:

Harriet A. Carr (petitioner) appeals here from an order of the Pennsylvania State Board of Pharmacy (Board) which revoked her pharmacist's license because of her distribution of drugs without a prescription, contrary to Section 5 of the Pharmacy Act,[1] 63 P.S. §390-5, and to the regulations promulgated by the Board.[2] It is undisputed that the petitioner, a then licensed pharmacist, delivered two grams of cocaine and 20 capsules of dexedrine without a prescription to an undercover agent of the Commonwealth. She was arrested and, prior to trial, she was placed on an accelerated rehabilitation program involving a one-year probation period. The Board, however, after

---

[1] Act of September 27, 1961, P.L. 1700, 63 P.S. §390-1 et seq.
[2] 49 Pa. Code §27.18(c) and (d).

conducting a hearing, entered an order revoking her license.[3]

In this appeal, the petitioner attacks the Board's action on four bases: (1) that the presence at the hearing of her former employer, Donald Bell, who was also vice-chairman of the Board, violated her due process rights; (2) that the Board failed to consider all of the relevant evidence; (3) that the Board's action was inappropriately harsh; and (4) that the classification of cocaine as a controlled substance is arbitrary and irrational.

As for the first issue, the parties seem to agree that Board member Bell, who was the prior employer of the petitioner, was biased against her, but the Board's position is that he did not participate in this ruling against her. Due process, of course, prohibits a person in a judicial capacity from hearing a case in which his interest in the case presents any possible temptation to him not to hold a totally impartial balance between the parties. *In re Murchison,* 349 U.S. 133 (1955); *State Dental Council and Examining Board v. Pollack,* 457 Pa. 264, 318 A.2d 910 (1974). Furthermore, it is a well settled rule that a party need not show actual bias or prejudice on the part of the adjudicatory body to prove a denial of due process. Rather, as our Supreme Court has stated: "'. . . [A]ny tribunal permitted by law to try cases and controversies must not only be unbiased but must avoid even the appearance of bias.'" *Gardner v. Repasky,* 434 Pa. 126, 129, 252 A.2d 704, 706 (1969). We must

---

[3] The sale of drugs without a prescription is an offense under the Pharmacy Act and does not require a felony conviction as a precedent to a license suspension or revocation, as is required under the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §780-113(a)(13). *See Duda v. State Board of Pharmacy,* 38 Pa. Commonwealth Ct. 378, 393 A.2d 57 (1978).

determine, therefore, the extent of Mr. Bell's contribution to the proceedings, if any, and whether or not it presented an appearance of possible prejudice.

The petitioner contends that, because the Board's order states that its action was based "upon the unanimous vote of its members," the order itself reveals that Mr. Bell either participated in the case, or at least that he failed to disqualify himself as he should have done. The Board responds that Mr. Bell did expressly disqualify himself on the record, and that the order's reference to the "unanimous vote" should be read to mean that the vote was unanimous only among the remaining Board members who did participate in this hearing.

We agree with the Board that the record contains a clear and extensive statement at the start of the hearing to the effect that Mr. Bell would not participate in the hearing or the making of the order in any way.[4] And our examination of the entire record re-

---

[4] CHAIRMAN STERN: . . . .

Now, before we start the hearing, I would like to advise, and please make a memorandum of it, that Mr. Don Bell is not taking part in the hearing or the final judgment, as he is a former employer of Miss Carr.

We will now proceed.

MR. DE WEES: Do we have Mr. Bell disqualifying himself on the record?

MR. BELL: It should be on the record.

MR. STEERMAN: Could we have Mr. Bell excuse himself from this hearing, Mr. Chairman?

MR. BELL: Under the Sunset [sic] Law I am permitted to sit, Counsellor. I am not going to participate.

MR. STEERMAN: I think your very presence here, and I say this respectfully, your very presence here is an intimidating factor to Miss Carr, and I think that it would be proper that you not only not take part in the hearing, but that your presence even not be needed here and that you excuse yourself.

CHAIRMAN STERN: I make an exception; it is overruled. Make a notation of that, please.

veals not only that Mr. Bell was expressly disqualified, but also that Mr. Bell did not contribute in any respect to the hearing, nor was he even mentioned for the remainder of the hearing after his disqualification was noted. Although the Board's order, taken alone, approaches an appearance of prejudice, we believe that the entire record adequately shows that Mr. Bell was disqualified at the hearing and that he did not participate in the vote.

The petitioner also contends, however, that Mr. Bell's physical presence at the hearing, regardless of whether or not he made any contribution to the hearing or vote, violated her right to due process. We can find no precedent for such a conclusion, nor does the petitioner point to any. By analogy to the Rules of Civil Procedure, insofar as they relate to exclusion of observers from trials, we believe that the authority to exclude from an administrative hearing observers whose presence is intimidating or discomforting to a party, and who have no interest in the proceeding, is within the discretion of the referee or tribunal and does not raise a due process issue. *Cf.* Pa. R.C.P. No. 223(a)(4).

The petitioner next contends that the Board failed to consider evidence concerning her academic and community achievements which, if considered, would have mitigated the severity of the Board's decision. This contention is without merit because matters of credibility and evidentiary weight are within the exclusive discretion of the factfinder below, and are not within our scope of review. *State Board of Medical Education and Licensure v. Grumbles*, 22 Pa. Commonwealth Ct. 74, 347 A.2d 782 (1975). Nor is the Board's order itself deficient for not mentioning its consideration of such evidence. The order outlines the Board's findings of fact with sufficient specificity to enable this Court to pass upon the issues of law and to allow us

to determine how the Board moved from its findings to its conclusions. Nothing more is required. *Begis v. Industrial Board, Department of Labor and Industry,* 9 Pa. Commonwealth Ct. 558, 308 A.2d 643 (1973); *State Real Estate Commission v. Bewley,* 1 Pa. Commonwealth Ct. 85, 272 A.2d 531 (1971).

The petitioner also argues that the revocation of her license is an inordinately harsh sanction and constitutes an unconstitutionally cruel and unusual punishment. Although the specific inhibition of Article I of the Constitution of this Commonwealth, providing that "excessive bail shall not be imposed, nor cruel punishments inflicted," Pa. Const. art. I, §13, applies only to criminal proceedings, our Supreme Court has held the principle applicable to all proceedings. *Scranton City v. Peoples Coal Co.,* 274 Pa. 63, 117 A. 673 (1922). In cases analogous to this, however, the courts of this Commonwealth have determined that, when the legislature has determined that possession of a drug is illegal, the possession of even the smallest amount of the drug is " '. . . fraught with the gravest personal risks,' " subjecting a person to possibly severe penalties. *Commonwealth v. Macek,* 218 Pa. Superior Ct. 124, 132, 279 A.2d 772, 776 (1971). A licensed pharmacist, moreover, is prohibited from selling even the smallest quantity of a drug without a prescription. We cannot, therefore, view the Board's action as inappropriately harsh.

The petitioner's final contention is that the legislature's classification of cocaine as a controlled substance, so as to require a prescription for its use, is arbitrary and irrational and deprives the petitioner of her right of equal protection. Three United States courts of appeals have considered similar attacks on Congress's classification of cocaine in the Comprehensive Drug Abuse Prevention and Control Act of 1970,[5]

---

[5] 21 U.S.C. §802(16).

and have concluded that there is a rational basis for the classification, and that it does not deny equal protection. *United States v. Vila,* 599 F.2d 21 (2d Cir. 1979); *United States v. Marshall,* 532 F.2d 1279 (9th Cir. 1976); *United States v. Smaldone,* 484 F.2d 311 (10th Cir. 1973). Similarly, we believe that the Commonwealth's classification of cocaine has a rational basis and must be upheld.

We must, therefore, affirm the order of the Board revoking the petitioner's license to practice pharmacy.

ORDER

AND Now, this 7th day of January, 1980, the order of the State Board of Pharmacy dated January 3, 1979, file number 77-PH-2544, is hereby affirmed.