Raymond M. Hartman, O.D., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Optometrical Examiners, Respondent.

Argued October 6, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Nicholas H. Krayer,* for appellant.

*Jerome Grossi,* Assistant Counsel, with him *James J. Kutz,* Assistant Counsel, *David F. Phifer,* Chief Counsel, *Jay Waldman,* General Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, January 11, 1983:

Raymond M. Hartman, O.D., (appellant) appeals here from the 90-day suspension of his optometry license based on two violations of the Optometry Act[1] (Act), namely the use of misleading advertising to the detriment of the general public and the failure to live up to the advertisements or make full refunds as guaranteed.

The facts may be briefly stated. Pursuant to complaints received by the Bureau of Professional and Occupational Affairs, the appellant was cited for numerous violations of the Act. At a hearing held before the State Board of Optometrical Examiners (Board), three of his former patients testified that he had made but failed to honor certain guarantees concerning the fit of their contact lenses. They testified that they had first become aware of the appellant's services through local newspaper advertisements, one of which guaranteed a "scientific fit", while another stated "ask about our unconditional

---

[1] Section 9 of the Act of March 30, 1917, P.L. 21, *as amended, formerly* 63 P.S. §237, repealed by §12 of the Optometric Practice and Licensure Act, Act of June 6, 1980, P.L. 197, 63 P.S. §244.12. A similar provision is now found in Section 7 of the Optometric Practice and Licensure Act, 63 P.S. §244.7.

guarantee.'' They said that the appellant also explained to them personally that the unconditional guarantee included refunding their money if they could not wear the contact lenses. Upon experiencing great difficulty with the lenses, they asked him to refund their money, but he refused.

In appeals from the Board, our duty is to affirm its decision unless we find that it violates the appellant's constitutional rights, that it is not in accordance with law, or that any of the necessary findings of fact are unsupported by substantial evidence. *Chaby v. State Board of Optometrical Examiners*, 35 Pa. Commonwealth Ct. 551, 386 A.2d 1071 (1978).

Hartman's first contention on appeal is that the Board abused its discretion in finding the testimony of the three patients more credible than his. He further argues that the Board should have accorded more weight to the fact that two of the patients were long-time friends, and that one of the two was at that time trying to collect a judgment from him.[2] It is axiomatic, however, that matters of credibility and evidentiary weight are within the exclusive discretion of the factfinder below, and are not within our scope of review. *Carr v. State Board of Pharmacy*, 48 Pa. Commonwealth Ct. 330, 409 A.2d 941 (1980). Furthermore, the Board, after specifically considering the evidence offered here by the appellant, concluded that the ''patients' testimony was the most credible.'' Such a conclusion is well within the province of the Board. *Id.*

---

[2] Inasmuch as all of the appellant's earnings and property belong to an organization called the Basic Bible Church of America, Inc., P. O. Box 61, Cayman Islands, British West Indies, the patient, Ms. Pletz, had been unable to collect the $488.75 judgment awarded by the Court of Common Pleas of Beaver County in a civil action which she brought against Hartman.

Hartman next contends that his due process rights were violated because of the commingling of prosecutorial and adjudicatory functions. He argues that both the Assistant Attorney General who prosecuted the case and the Assistant Attorney General who was Counsel to the Board were attached to the Bureau of Professional and Occupational Affairs, and that this constituted a violation of his rights. In *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong,* 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976), we clearly held that this situation is not per se a violation of due process. And, as we recognized in *Bruteyn Appeal,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977), the *Thorp* case "turned on the fact that there was no *actual prejudice* rendering the hearing constitutionally infirm". (Emphasis in original.) Two factors which we considered relevant in a similar case included *inter alia,* (1) a determination of whether or not anything in the record indicated improper commingling of the functions on the part of the two Assistant Attorney Generals, and (2) whether or not either is disclosed as having concerned himself with the other's activities. *Northeast Dodge Co. v. State Board of Motor Vehicle Manufacturers, Dealers & Salesmen,* 54 Pa. Commonwealth Ct. 182, 420 A.2d 771 (1980). After a close examination of the record, however, as well as of the 96 findings of fact, we must conclude that there is no evidence here of any violation of due process. We note that, not only does the record fail to reveal any improper commingling of the functions on the part of the two Assistant Attorney Generals, but that their own sworn testimony supports the conclusion that neither of them concerned himself with the activities of the other. They have not discussed any substantive issues in the case and neither has had access to the other's files. Moreover,

after reviewing the testimony concerning any procedural communications[3] between the Prosecutor and the Counsel for the Board, we are convinced that these communications were impartial and relevant to the proper handling of this case. Obviously, not every communication between the Prosecutor and the Counsel for the Board results in an improper commingling of prosecutorial and adjudicatory functions, and where, as here, the communications were strictly impartial and administrative in nature, there was no denial of due process.

We will, therefore, affirm the order of the Board.

ORDER

AND Now, this 11th day of January, 1983, the order of the State Board of Optometrical Examiners in the above-captioned matter is hereby affirmed.

---

[3] These communications included (1) a motion for request to close discovery filed by the Prosecutor, a copy of which was sent to Hartman, (2) a communication from Counsel to the Board to the Prosecutor informing him that she had received a phone call from Hartman to the effect that he was represented by legal counsel, and (3) an oral communication from the Prosecutor to the Counsel for the Board opposing Hartman's request for a continuance, which communication had *previously* been conveyed to counsel for Hartman,