**George E. WHITE, III, O.D., Petitioner,**

v.

**STATE BOARD OF OPTOMETRY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1996.
Decided Aug. 19, 1996.
Reargument Denied Oct. 15, 1996.

---

4. The former 37 Pa.Code § 71.2(10).

Michael J. McCaney, Jr., for Petitioner.

Deborah B. Eskin, for Respondent.

Before McGINLEY and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

KELLEY, Judge.

George E. White, III, O.D., petitions for review of the adjudication and order of the Pennsylvania State Board of Optometry (board) which suspended his license to practice optometry for thirty days, and imposed a fine of $10,000.00. The board determined that Dr. White had violated sections 7(a)(10) and (11) of the Optometric Practice and Licensure Act (OPLA)[1] by prescribing therapeutic drugs for patients. We vacate and remand.

The board made the following relevant findings of fact in this case:

1. George E. White, III, O.D., holds license no. OE–005442–P, to practice optometry in the Commonwealth which was originally issued in 1978.

\* \* \* \* \* \*

4. At all times relevant to this proceeding, [Dr. White] held a license to practice optometry in the Commonwealth.

5. From at least June, 1988 until February, 1995 [Dr. White] was a practicing optometrist with the Harleysville Eye Associates in the Commonwealth of Pennsylvania.

6. On April 18, 1991, [Dr. White] prescribed Betagan 5% Ophthalmic Solution, Rx # 786791, to patient "C.B.".

7. On December 8, 1989, [Dr. White] prescribed Decadron Ophthalmic Ointment 3.5g to patient "K.S.".

8. On February 23, 1990, [Dr. White] prescribed Cortisporin Ophthalmic Ointment 3.5g to patient "J.M.".

9. On July 11, 1990, [Dr. White] prescribed Dexamethasone Ophthalmic Ointment 3.5g to patient "J.M.".

10. On August 9, 1990, [Dr. White] prescribed Garamycin Ophthalmic Solution 10cc to patient "R.F.".

11. On September 28, 1990, [Dr. White] prescribed Blephamide Ophthalmic Solution 10cc to patient "C.S.".

12. On September 28, 1990, [Dr. White] prescribed Cyclogyl 1% Ophthalmic Solution to patient "C.S.".

13. On February 21, 1991, [Dr. White] prescribed Blephamide Ophthalmic Solution 10cc to patient "E.F.".

---

1. Act of June 6, 1980, P.L. 197, *as amended*, 63 P.S. §§ 244.7(a)(10) and (11). Sections 7(a)(10) and (11) of the OPLA provide, in pertinent part:

(a) The board shall have the power to ... revoke or suspend a license to practice optometry in this Commonwealth for:

\* \* \* \* \* \*

(10) Failure to conform to, the acceptable and prevailing standards of optometric practice in rendering professional service to a patient. Actual injury to a patient need not be established.

(11) Neglect of duty in the practice of optometry, which may include failure to refer a patient, when appropriate, to a physician for consultation or further treatment when an optometric examination determines the presence of a pathology.

14. On February 27, 1991, [Dr. White] prescribed Neodecadron Ophthalmic Ointment 3.5g to patient "T.Y.".

15. On April 13, 1991, [Dr. White] prescribed Garamycin Ophthalmic Solution to patient "N.S.".

16. On June 6, 1991, [Dr. White] prescribed Tobrex 0.3% Ophthalmic Solution 10cc to patient "H.C.".

17. On July 11, 1991, [Dr. White] prescribed Tobrex Ophthalmic Solution 10cc to patient "M.G.".

18. On August 23, 1991, [Dr. White] prescribed Pred Forte Ophthalmic Solution 10cc to patient "J.H.".

19. On December 4, 1991, [Dr. White] prescribed Blephamide Ophthalmic Solution 10cc to patient "W.G.".

20. Betagan 5% Ophthalmic Solution, Decadron Ophthalmic Ointment 3.5g, Cortisporin Ophthalmic Ointment 3.5g, Dexamethasone Ophthalmic Ointment 3.5g, Garamycin Ophthalmic Solution 10cc, Blephamide Ophthalmic Solution 10cc, Cyclogyl 1% Ophthalmic Solution, Neodecadron Ophthalmic Ointment 3.5g, Garamycin Ophthalmic Solution, Tobrex 0.3% Ophthalmic Solution 10cc, Tobrex Ophthalmic Solution 10cc, and Pred Forte Ophthalmic Solution 10cc, are therapeutic pharmaceutical agents.

21. [Dr. White] signed pads of blank prescriptions which he kept at the front desk so that if he were busy and couldn't fill out a prescription, one of the people behind the desk would fill it out.

22. Sometimes [Dr. White] filled out the medication information on a prescription; at other times, assistants, students or residents did so.

23. Everyone in [Dr. White]'s office is under his supervision.

Board's Adjudication and Order, pp. 9–11.

As a result, in 1991 a complaint was filed with the Pennsylvania Bureau of Professional and Occupational Affairs (bureau) regarding Dr. White's prescribing therapeutic drugs to patients. On February 17, 1994, the chief prosecutor with the bureau, acting for the board, filed a notice and order to show cause

alleging that Dr. White had prescribed therapeutic drugs in violation of section 7(a)(10) of the OPLA, 63 P.S. § 244.7(a)(10).

Dr. White filed a timely answer denying the charges and raising a number of affirmative defenses. Specifically, Dr. White alleged that, at the times alleged, he was in practice with a physician authorized to prescribe medication, the prescriptions were actually made by the physician after communication with Dr. White, confirmation by the physician and/or review of the patient's chart by the physician. Thus, the prescription and the actions of Dr. White were supervised by the physician.

On January 23, 1995, an amended notice and order to show cause was filed by the bureau which alleged that Dr. White had improperly prescribed therapeutic medication on an additional nineteen occasions. Dr. White filed a timely answer again denying the charges.

Dr. White also filed a motion to dismiss, alleging that the board did not authorize the issuance of the order to show cause, and that the bureau's prosecuting attorney lacked the authority to issue the order to show cause. The bureau filed a memorandum and answer maintaining that sections 3(b)(17) and 4 of the OPLA, 63 P.S. §§ 244.3(b)(17) and 244.3a, and the Commonwealth Attorneys Act[2] permit the bureau to initiate actions against those licensed by the board.

Dr. White filed another motion to dismiss, alleging that the case had been improperly continued over his objection, and that the amended order to show cause was defective because the prosecuting attorney did not provide him with copies of the prescriptions underlying the charges. The prosecuting attorney for the bureau filed a timely answer to the motion.

On February 8, 1995, a hearing was conducted by the board. After the testimony had concluded, the bureau entered a motion to amend the order to show cause to allege that Dr. White had also violated section 7(a)(11) of the OPLA, 63 P.S. § 244.7(a)(11). On October 11, 1995, the board issued its

2. Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. §§ 732–101—732–506.

adjudication and order finding that Dr. White had violated both sections 7(a)(10) and (11) of the OPLA, 63 P.S. §§ 244.7(a)(10) and (11), by writing prescriptions for therapeutic medications in 1988, 1989, 1990 and 1991. Dr. White then filed the instant petition for review in this court.

On appeal, Dr. White claims:[3] (1) the board abused its discretion by allowing the further amendment of the orders to show cause to include the alleged violations of section 7(a)(11) of the OPLA, 63 P.S. § 244.7(a)(11), after the record had been closed and he had not been provided with prior notice; (2) the board's determination that he "prescribed" therapeutic medications is not supported by substantial evidence sufficient to demonstrate a finding of violations of section 7(a)(10) and (11) of the OPLA, 63 P.S. §§ 244.7(a)(10) and (11); (3) sections 7(a)(10) and (11) of the OPLA, 63 P.S. §§ 244.7(a)(10) and (11), are unconstitutionally vague and unenforceable against him; (4) the disciplinary action against him on the charges alleging violations of the OPLA should have been barred due to laches; (5) the prosecutor with the bureau did not have the authority to issue the orders to show cause alleging violations of the OPLA; (6) the board abused its discretion by imposing a penalty which is grossly disproportionate to the acts complained of in the orders to show cause; (7) the board erred in precluding the admission of patient charts offered as evidence by him in his defense of the charges; and (8) the proceedings against him were improper as the hearing was conducted before the board without a quorum and the board's minutes do not demonstrate that the voting members of the board who were not present at the hearing read the record of the hearing before voting.

■ We initially note that in appeals from the board, it is this court's duty to affirm the board's decision unless we find that it violates the appellant's constitutional rights, that it is not in accordance with the law, or that any of the necessary findings of fact are not supported by substantial evidence. *Hartman v. State Board of Optometrical Examiners,* 71 Pa.Cmwlth. 110, 454 A.2d 1150 (1983). In addition, it is axiomatic that matters of credibility and evidentiary weight are within the exclusive discretion of the board as the fact finder below, and are not within our scope of review. *Id.*

■ In this appeal, Dr. White first claims that the board abused its discretion by allowing the further amendment of the orders to show cause to include the alleged violations of section 7(a)(11) of the OPLA after the record had been closed and he had not been provided with prior notice.

As noted *infra,* the original and amended orders to show cause issued by the bureau alleged that Dr. White had violated section 7(a)(10) of the OPLA. After all of the testimony had been introduced at the hearing, the bureau requested that the orders be further amended to include Dr. White's alleged violation of section 7(a)(11) of the OPLA as well. (N.T.,[4] p. 293–94). The bureau requested the amendment based on Dr. White's testimony at the hearing. *Id.* Counsel for Dr. White objected to the amendment. *Id.* The board deferred ruling on the proposed amendment, and directed the parties to address this issue in their post hearing briefs which were to be filed with the board. (N.T., p. 294).

Section 35.49 of the General Rules of Administrative Practice and Procedure permits the amendment of pleadings in administrative proceedings and reads, in pertinent part, as follows:

**§ 35.49. Amendments to conform to the evidence.**

(a) When, at a hearing, issues not raised by the pleadings are introduced by express or implied consent of the parties, they shall be treated as if they had been raised in the pleadings. The amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these new issues may be made upon motion of a participant at any time during the hearing.

---

**3.** In the interest of clarity, we reorder Dr. White's claims in this appeal.

**4.** "N.T." refers to the Notes of Testimony of the hearing conducted before board on February 8, 1995.

If evidence upon the new issues is objected to on the ground that it is not within the issues raised by the pleadings, the agency head or the presiding officer may allow the pleadings to be amended and the evidence to be received, when it appears that the presentation of the merits of the proceeding will be served thereby without prejudicing the public interest or the rights of any participant. *When in the discretion of the agency head or the presiding officer, a continuance is necessary in order to enable the objecting participant to meet the new issues and evidence, a continuance may be granted by the agency head or the presiding officer....*

(b) If an amendment adopted under subsection (a) has the effect of broadening the issues in the proceeding, notice of the amendment shall be given in the same manner as notice was given at the commencement of the proceeding and to the same class of persons who received the notice.

1 Pa.Code § 35.49.

In the instant case, in the Adjudication and Order suspending Dr. White's license and imposing a fine, the board granted the bureau's motion to further amend the orders to show cause to include Dr. White's purported violation of section 7(a)(11) of the OPLA. *See* Adjudication and Order, p. 1 n. 1. In support of its decision, the board stated the following:

At the hearing, the [bureau] moved to further amend the Order to Show Cause to include a violation of 63 P.S. § 244.7(a)(11). The Board permits the amendment of the Order to Show Cause pursuant to 1 Pa. Code § 35.49(a) to clarify the merits of the case and to conform with the new evidence offered by [Dr. White]. At the hearing, [Dr. White] for the first time asserted that his office staff was responsible for signing the prescriptions. This response conflicted with [Dr. White]'s earlier answer that the prescriptions were made by the group practice physician after consultation between [Dr. White] and the physician. Although [Dr. White] objected to the amendment, he did not request a continuance.

He responded to both the amendment of the Order to Show Cause and the new charge of neglect of duty in his post-hearing brief. As such, the Board believes neither party was disadvantaged and the public interest in the merits was served. As the amendment did not broaden the issues in the proceeding, additional notice as per 49 Pa.Code § 35.49(b) is not required.

*Id.*

In *Glotfelty v. State Board of Veterinary Medicine,* 133 Pa.Cmwlth. 660, 577 A.2d 238 (1990), the Commonwealth filed an administrative complaint against a veterinarian, alleging that he had violated sections 21(4) and 21(12) of the State Veterinary Medicine Practice Act.[5] Following a hearing on the complaint, the board dismissed the complaint without prejudice, determining that insufficient evidence of the alleged charges had been presented at the hearing. *Glotfelty,* 577 A.2d at 239. The board subsequently granted the Commonwealth's request for reconsideration, and granted the Commonwealth leave to amend the complaint. *Id.* The Commonwealth then filed an amended complaint which contained the original charges and a new charge that the veterinarian had violated section 21(1) of the State Veterinary Medicine Practice Act.[6] *Id.* Without conducting further hearings, the board again dismissed the alleged violations of sections 21(4) and 21(12). *Id.* However, the board found that the veterinarian had violated section 21(1), and suspended his license for a two-year period. *Id.*

On appeal to this court, the veterinarian claimed that an administrative complaint may not be amended to include new charges after the close of hearings and, if such amendment is permitted, hearings must be conducted to address the new violations. *Id.* In considering these claims, we first noted that section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504 states that "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been af-

---

**5.** Act of December 27, 1974, P.L. 995, *as amended,* 63 P.S. §§ 485.21(4) and (12).

**6.** 63 P.S. § 485.21

forded reasonable notice of a hearing and an opportunity to be heard." *Id.*

We ultimately determined that:

Having dismissed the violations of Sections 21(4) and 21(12), the Board based the suspension solely on the Section 21(1) violations. The Board did not hold a hearing following the amendment of the complaint, asserting that all factual evidence had been presented previously and only legal issues remained to be decided. Because no hearing was held following the amendment of [the] complaint, Glotfelty was precluded from addressing the Section 21(1) violations. Contrary to the Board's assertions, opportunity to address charges in a responsive pleading is insufficient to satisfy due process requirements. Our Supreme Court has held that an adjudication is invalid "except upon a hearing wherein each party has opportunity to know of the claims of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence on his own behalf, and to make argument."

. . .

Because new charges were brought against Glotfelty after [the] close of the hearing, the Board denied him the opportunity to hear the evidence as it related to those new charges, or to cross-examine witnesses and introduce exculpatory evidence as to those charges. Consequently, we hold that the Board denied Glotfelty his due process rights and vacate and remand to the Board in order to conduct hearings on the amended complaint.

*Id.* (citation omitted).

█ In the instant case, the bureau moved to amend the orders to include Dr. White's alleged violations of section 7(a)(11) of the OPLA, before the hearing on the initial alleged violations had concluded. However, the bureau's motion was entered after all of the witnesses had testified at the hearing, and after all of the evidence had been presented to the board. By allowing the amendment of the orders at that stage of the proceedings, the board denied Dr. White the opportunity to hear the evidence as it related to the new charges, or to cross-examine witnesses and introduce exculpatory evidence as to those charges. As a result, the board denied Dr. White his due process rights regarding his purported violations of section 7(a)(11) of the OPLA. *Glotfelty.* In addition, the opportunity of Dr. White to address the new charges in his post-hearing brief is insufficient to satisfy these due process requirements. *Id.*

█ Moreover, the amendment of the orders to include the alleged violations of a separate and distinct provision of the OPLA certainly broadened the issues which were to be considered by the board at the hearings in this case. As a result, Dr. White was entitled to receive notice of the amendment in the same manner as notice was given at the commencement of these disciplinary proceedings. 1 Pa.Code § 35.49(b).

Because the board's order imposing disciplinary sanctions was based, in part, on Dr. White's alleged violations of section 7(a)(11) of the OPLA, this case must be remanded to the board in order to conduct hearings on the further amended orders to show cause. *Glotfelty.* Due to our disposition of this issue, we will not address the other claims raised by Dr. White in this appeal.

Accordingly, the order of the board is vacated and this case is remanded to the board for proceedings consistent with this opinion.

### ORDER

NOW, this 19th day of August, 1996, the order of the State Board of Optometry, dated October 11, 1995, at No. 0057-52-94, is vacated, and this case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.